J. H. GRAHAM, Appellant, v. ROY CRISMAN et al., Appellees.

**APPEAL AND ERROR:** Questions Reviewable—Failure to Object.
1  Certain colloquium between counsel and court held not to raise or preserve any question.

**ACCORD AND SATISFACTION:** Burden of Proof—Performance.
2  He who pleads ''accord and satisfaction'' has the burden of

proof to establish both the accord and the satisfaction of the accord—in other words, performance. Ordinarily accord without satisfaction—performance—availeth nothing.

PRINCIPLE APPLIED: Plaintiff brought action on a lease calling for a specified cash rental. Defendants pleaded an accord and satisfaction in this, that later in the season, on account of a partial failure of crops, the plaintiff agreed to accept the proceeds of a certain portion of the crop in lieu of the cash rental. This plaintiff denied. *Held*, the defendants must prove both the accord and performance on their part—that is, that they delivered the said proceeds to plaintiff.

**APPEAL AND ERROR:** Failure to Comply with Rules—Costs.
3   Failure, in instant case, to comply with the rules governing appeals, sufficiently met by taxation of costs.

*Appeal from Harrison District Court.*—Hon. A. B. Thornell, Judge.

Saturday, April 11, 1914.

Rehearing Denied Monday, February 15, 1915.

Action upon a written lease to recover rent. By way of affirmative defense the defendants pleaded an accord and satisfaction. There was a verdict for the defendants. The plaintiff appeals.—*Reversed* and *Remanded*.

*Cochran & Barrett*, for appellant.

*H. H. Roadifer* and *H. L. Robertson*, for appellees.

Evans, J.—The defendants are G. W. Crisman and Roy Crisman, father and son. The plaintiff leased to them his farm of 320 acres by written lease for the year 1911 for an agreed rental expressed therein of $1,600. The defendants paid about $460 of such rent. Their plea of accord and satisfaction is based upon the claim that in August or September, 1911, because of the partial failure of crops, the plaintiff

proposed to reduce his claim for rent and to accept, in lieu of the stipulated rental, the proceeds of one-half of the crop and that they accepted such proposal and paid to the plaintiff such proceeds as agreed. This contention is denied in material respects by the plaintiff. He admits, however, that he did offer to accept $1,300 in full of the rent and that such amount was then estimated by him and the defendants as one-half of the proceeds of the crop. It is undisputed that such alleged offer was not accepted by the defendants. At the time of this alleged agreement the threshing of the small grain had occurred, resulting in about 455 bushels of wheat, barley and oats. There was a large amount of valuable hay, which was later sold at some $12 to $15 per ton, and 120 acres of corn. The witnesses differ as to the yielding quality of the corn crop. Defendants admit, however, that they cut 40 acres of corn fodder, for which they were offered $10 per acre, and that there were 900 bushels of husked corn worth sixty cents a bushel. The new oral contract relied on by the defendants is stated by each of them. Defendant Roy Crisman testified as follows:

"Graham said it was a bad year and he would have to do the best he could; to give him—to sell the small grain and give him half (½) the money and then he went on further to talk about the crops. He said he thought the best way to divide it was to sell it. He said he didn't care to fool with it. Just to sell it and give him one-half (½) the money. He said he would cut the pasture half in two. The pasture land was $5 an acre. He said to go ahead and put the hay up and do with that like we did with the small grain. He did not say anything about the corn, but he said later on, to feed it to the cattle.

## CROSS-EXAMINATION.

"Mr. Graham and my father and I were all that were present at the granary when we had our talk about the rent.

I asked him if he would take half ($\frac{1}{2}$) the crop instead of cash. He said he thought that would be a fair way to settle it. I then said all right."

G. W. Crisman testified as follows:

"Down by the granary he told us he would take one-half ($\frac{1}{2}$), that we should market it and divide the money. I said it is the only way to divide it—is to haul it to town and sell it and divide the money and each one take one-half of the share. He said all right. We talked the matter all over. He told us he would take one-half the hay, also one-half the crops generally. This was the second time he was there."

It appeared from the evidence of defendants that most of this corn and much of the hay was fed by the defendants to mortgaged stock. They also testified that this course was consented to by the plaintiff, especially as to a certain bunch of 38 steers and that he was to receive one-half the margin to be realized from such stock over and above the mortgage. Such full margin later proved to be $171.00. This arrangement was said to have been made subsequently to the first oral contract of accord. It appeared also that there were about 300 bushels of corn left over and above the amount thus fed, from which the plaintiff realized nothing. The defendants divided this among themselves. This is explained by Roy Crisman in his evidence as follows:

"There was about 300 bushels of corn left and Graham told me to give Pa some of it to make a crop on—divide it with him and I did so."

This arrangement was a still later modification of the alleged oral agreement.

The foregoing is perhaps a sufficient statement of the salient facts to enable our consideration of the errors assigned by appellant.

1. The first error assigned by appellant relates to
the admission of certain testimony of one of
the defendants in rebuttal in explanation of a
certain conversation with him which had been
testified to by a witness on behalf of plaintiff.
We fail to find any record of any objection made by the plain-
tiff at any stage of the evidence. As to the evidence com-
plained of in argument, the following is the record:

1. APPEAL AND
ERROR: ques-
tions review-
able: failure
to object.

Mr. Cochran: "Hold on a minute! If you are going to
try and make this rebuttal I am going to insist on having you
confine it to—"

The Court: "Oh, I suppose he has the right to give his
version of the conversation."

Mr. Cochran: "He hasn't the right on examination in
chief."

The Court: "Oh, I think so."

Mr. Cochran: "Give us an exception."

It is needless to say that no question is raised or preserved
by such a record.

2. Upon the submission of the case, the plaintiff sub-
mitted to the court certain requested instructions which were
refused. One of these purported to instruct the jury that the
burden was on the defendant not only to
prove the alleged oral contract to settle but
that the defendants must prove also that they
performed such contract of settlement by the
delivery of the proceeds agreed on. The trial court gave no
instruction to this effect. On the contrary, the necessity of
proving "satisfaction" by the defendants was entirely ignored
in the instructions and the case was submitted on the theory
that if the contract was proved, it was a good defense regard-
less of performance. It is quite clear to us that the trial
court erred at this point and that the case presented by de-
fendants both by pleadings and evidence is one wherein the

2. ACCORD AND
SATISFACTION:
burden of
proof: per-
formance.

general rule obtains and wherein both accord and satisfaction must be shown. The following excerpts from a few of our cases will indicate the general rule and the qualifications and exceptions thereto.

In *Hall v. Smith*, 10 Iowa 45, 48, it was said: "An accord and satisfaction arises, where there is another agreement between the parties, which is itself the satisfaction for the debt or former contract, or when such second agreement has been executed and performed. This is the statement of the general rule. The exceptions and modifications to it we need not at present notice. Where the new or second undertaking has been performed and this performance accepted, there will usually be but little if any difficulty in determining that the satisfaction is complete. In this case it is not claimed that there was any such performance, and the question is whether the new promise itself is to have the effect of satisfying the original claim or of taking away the remedy on the bond.

"Mr. Parsons says, that a promise without execution is no satisfaction unless by express agreement it had this effect. And again, it is said that the promisee may sue on the original cause of action, unless by the tenor or the legal effect of the new contract, the new promise is itself a satisfaction and an extinction of the old one. 2 Parsons on Cont. 194, 196, 199, note *s*; 5 Term R. 513; 13 M. & W. 63. 'It' says Redfield, J., in *Babcock v. Hawkins*, 23 Verm. 561, 'is ordinarily a question of intention, and should be evidenced by some express agreement to that effect, or by some unequivocal act evidencing such a purpose.' In that case this intent was shown by executing a receipt in full to settle all book accounts to that date, including that sued on. So in arriving at the intention courts will ascertain whether the second agreement is founded upon a new consideration, whether the promisee has surrendered or retained the evidence upon which to maintain his former remedy, whether any securities have been given up, whether a release or receipt has been executed, whether the new contract is of a higher grade than the old. These and

similar considerations are to have weight in determining the
intention of the parties.

"In this case we do not understand either the answer or
proof to go to the extent above laid down. The mere agree-
ment of Bates to pay a thousand dollars, remaining unper-
formed, without further proof that this agreement was to be
received in satisfaction of the plaintiff's remedy against the
obligors in the bond for the failure of the principal to prose-
cute his action, will not extinguish the old or original de-
mand."

On a second appeal of the same case, *Hall v. Smith*, 15
Iowa 588, it was said:

"The common law declares that, without a satisfaction,
an accord is no bar to a suit upon the original obligation. If,
however, the accord is founded upon a new consideration, and
accepted as satisfaction, it operates as such satisfaction, and
will be held to take away the remedy upon the old contract.
This we believe to be in accordance with the current of author-
ities, and is certainly in harmony with the analogies and
equities of the law. Story Cont., Sec. 982; Pars. Cont. 194,
*et seq.* Whether this has been a new consideration in legal
contemplation, and particularly whether the accord or (new)
agreement was accepted as satisfaction, depends upon the
circumstances of each case; and in determining its tenor and
effect, we must, from the circumstances, endeavor to ascertain
the intention of the parties. For, while some authors and
some of the cases speak of the unexecuted promise being sat-
isfaction in those cases only where it is made so by express
agreement, we suppose that ordinarily no rule is violated in
holding that it is sufficient, if this intention or purpose is
evidenced by any unequivocal act, or in any clear manner.
It was said in examining a somewhat similar proposition in
*Levi v. Karrick*, 13 Iowa 344: 'The question is one of evi-
dence or contract, and whether . . . established by nec-
essary implication, or from express stipulation, the rule is
the same.' "

In *Bradley v. Palen,* 78 Iowa 126, 130: ''The court instructed the jury in substance that if it found that there had been an agreement to settle the dispute as to the wagon, and that as a part of the settlement the defendant was to ship the wagon to Algona when requested to do so, and that if, after said notice or request, he failed to so ship it in a reasonable time, he could not urge such settlement against plaintiffs' right to recover. Appellant's objection to this instruction is that, if there was a contract of settlement, it put an end to the contract of sale, or the order, even though the settlement was not complied with. It is a little difficult to see on what plaintiffs could base their cause of action, unless it was on the fact of their sale of the wagon, and the failure to pay therefor. We think, before the defendant can avoid his contract of sale by an accord and satisfaction, he must establish both. An agreement to satisfy a claim, by way of settlement, is not enough. It must be satisfied. It was not enough to agree to return the wagon in settlement, but it must be returned as agreed; and, if not, it was not a settlement of the debt. *Hall v. Smith,* 10 Iowa 45, and other cases there cited. The instruction of the court is in harmony with this view.''

Appellee relies at this point upon *Merry v. Allen,* 39 Iowa 235; *Raymond v. Krauskopf,* 87 Iowa 602; *Evans v. McKanna,* 89 Iowa 362.

We find nothing in these cases inconsistent with the above quotations. In the *Merry* case, a new written contract was concededly executed which purported to be a substitute for the former contract and to include other subject matter. The resistance to such new contract was that there was a mistake in its terms and that it had in fact never been delivered. In the *Raymond* case, a judgment upon a directed verdict was reversed on the ground that there was sufficient evidence to go to the jury on the question whether there was a consideration for the agreement. The question of satisfaction was not involved. The alleged agreement relied on in that case if proved was proved by undisputed evidence and was not in-

volved in any question presented on the appeal. The *Evans* case was one where a surrender of a lease at the expiration of a year was shown and subsequently a new oral lease for the same property was entered into. It will be seen, therefore, that none of the foregoing cases involve the question of accord and satisfaction in the sense in which that phrase is used. As an abstract proposition it is elementary that any contract between parties may be supplanted by another founded upon an appropriate consideration and that the new becomes the substitute for the old. But where one party to a contract performs his part according to its terms and then agrees to accept from the other party a modification of the consideration moving to him, he is not ordinarily bound thereby unless the other party perform. The very agreement of the other party in such a case is that he shall perform, and it is not available to him as a defense against the first party unless he does perform. It is contended for the appellee that the facts of the case at bar do not bring it within this rule; that the new agreement was intended as of itself, regardless of performance, to substitute and satisfy the prior agreement to pay. The evidence in the record furnishes no justification for this contention. Without dispute, it is a case where the plaintiff aimed to make a substantial concession to the defendants. Such is the pleading of the defendants. The undisputed circumstances of the case completely hedge the defendants and confine them to the rule of accord and satisfaction. The reasonableness of this rule is well illustrated in the case. If the plaintiff can be defeated in his action upon the lease by the mere subsequent agreement of the defendants without performance, then he is driven to another action upon the alleged oral agreement. The two defendants testify differently as to what such oral agreement was. The plaintiff himself in manifest good faith denies its existence. He must sue, therefore, not only upon a contract which he himself denies but upon one concerning the terms of which the defendants themselves disagree. It is very appropriate, therefore, that

the same jury which should find the existence of such contract, should also determine its terms and whether it was performed by the defendants. Such situation is further emphasized in this case by the successive modifications of the original modifications which were testified to by the defendants to meet the exigencies created by indisputable facts.

3. The plaintiff also asked an instruction for a directed verdict on the ground that the evidence wholly failed to show satisfaction or performance of the alleged oral agreement by defendants. The point made in such requested instruction is now urged upon us. It presents a serious question upon this record. In view of the fact, however, that the case was tried by the court below on the theory that it was not necessary for the defendants to prove satisfaction and in view of the fact that a new trial must be ordered, we think we ought not to undertake to pass upon the sufficiency of the evidence in that regard. We therefore make no pronouncement thereon.

4. It is urged by appellee that appellant has failed to comply with the rules of the court in the presentation of his appeal and more particularly in the form of his argument 3. APPEAL AND and it is urged that the judgment ought for ERROR: failure that reason to be affirmed. We think it must to comply with rules: costs. be said that the appellant's argument is quite unconventional and quite unconscious of our rules. We think, however, that an appropriate penalty can be imposed in a taxation of costs. No costs of printing appellant's brief will be taxed in this court in his favor.

For the error indicated in division 2 hereof, the judgment below will be reversed and the cause remanded.—*Reversed* and *Remanded.*

LADD, C. J., WEAVER and PRESTON, JJ., concur.